UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PRESERVATION SOCIETY OF CHARLESTON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS, *et al.*, <br><br> Defendants. | Civil Action No. 12-1089 (JEB) |

## MEMORANDUM OPINION

Plaintiffs Preservation Society of Charleston and South Carolina Coastal Conservation League have brought this action under the Administrative Procedure Act, challenging the United States Army Corps of Engineers' provisional approval of the construction of additional pilings beneath the Union Pier Terminal in Charleston, South Carolina. Plaintiffs fear such construction will facilitate the influx of large cruise ships to the detriment of Charleston's historic district. Defendants now bring the instant Motion to Transfer the case to the District of South Carolina pursuant to 28 U.S.C. § 1404(a). Because the Court finds that the case could have been brought there and that both considerations of convenience and the interests of justice favor transfer, it grants Defendants' Motion.

**I.      Background**

The dispute in this case arises from the Corps' provisional approval of an application by the South Carolina Ports Authority (SPA) to construct additional pilings underneath the Union Pier Terminal in Charleston. See Mot. at 2. The pilings are designed to provide support to elevators and escalators being added in a renovation of Building 322, located at the northern end

1

of the terminal.  See id.; Compl., ¶ 30.  The parties, however, disagree sharply about the scope and character of the proposed construction work and the potential impacts it might have on the region.  Compare Compl., ¶ 1 ("This action challenges the Defendants' decision to authorize construction of a large cruise ship terminal one block from the National Historic Landmark District of Charleston . . . .") with Rep. at 2 ("Defendants unequivocally reject Plaintiff's characterization of the case . . . .").

Although the Court need not resolve these issues for purposes of this Motion, some detail helps to inform the ultimate decision.  The Union Pier Terminal is an expansive structure "covering 43 acres of land, acres of pile-supported concrete docks and wharves, more than 600,000 square feet of warehouses, transit sheds, and other port related buildings, and including nearly half a mile of berths" used by shipping and cruise companies for loading and unloading both marine cargo and passenger vessels.  See Mot., Exh. A (April 18, 2012, Memorandum for Record).  In January 2012, the SPA sought approval for construction of additional pilings under Building 322.  See id.  Following negotiations with SPA regarding potential environmental impacts, the Corps' Charleston District office provisionally authorized construction of the new pilings under Nationwide Permit 3, issued pursuant to Section 10 of the Rivers and Harbors Act, 33 U.S.C. § 403.  The Corps' Provisional Authorization is contingent on a Section 401 Water Quality Certification, to be issued by the South Carolina Department of Health and Environmental Control, and a Coastal Zone Management Act "consistency determination," also to be issued by the state.  See Mot. at 4.  Neither certification process has been completed.  See id.

According to Lieutenant Colonel Edward P. Chamberlayne, Commander and District Engineer of the Corps' Charleston District, the agency decisions at issue in this case were made

entirely by staff located in Charleston. See Mot., Exh. D (Declaration of Edward P. Chamberlayne), ¶¶ 5-9. Defendants further assert that "while staff from Corps Headquarters and elsewhere were involved in a general advisory capacity, they did not participate in the decision or direct the regulatory process leading to the verified provisional authorization." Id., ¶ 8. For their part, Plaintiffs allege no specific involvement by decisionmakers at the Corps' headquarters in Washington, D.C.

Plaintiffs Preservation Society of Charleston and the South Carolina Coastal Conservation League are two community organizations based in Charleston that seek to preserve, respectively, the "historical, architectural and cultural character" and "natural resources and quality of life" in and around the city. See Compl., ¶¶ 7-8. While the Corps' negotiations with SPA were ongoing, Plaintiffs formally requested that the Corps notify them of "any application for federal permitting and funding relating to cruise ship operations at Union Pier and for the initiation of a . . . consultation process with the opportunity for public participation." Id., ¶ 35. Plaintiffs allege that the Corps did not respond to this request. Id., ¶ 36. Plaintiffs were subsequently informed of the Provisional Authorization in response to a Freedom of Information Act request. Id., ¶ 40.

After sending a letter to the Corps on May 15, 2012, alleging "numerous violations of law" and urging corrective action, Plaintiffs filed the instant action before this Court on July 2, 2012. Id. Plaintiffs allege that the Corps' "[did] not [consider], [give] the opportunity for public comment upon, or [consult] with other governmental entities concerning: (a) impacts of the project on historic properties or the human or natural environment, (b) alternative locations for a new cruise terminal to reduce such impacts; [and] (c) operational and design options to reduce those impacts . . . ." Id., ¶ 38. In doing so, Plaintiffs allege that the Corps violated Section 106

of the National Historic Preservation Act (NHPA), 16 U.S.C. § 470f, the National Environmental Policy Act of 1969 (NEPA), 40 U.S.C. § 4332(2)(C), the Corps' own permitting regulations, 33 C.F.R. §§ 300 *et seq.*, and the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq*. As Defendants, Plaintiffs named the Corps, as well as John M. McHugh, Secretary of the Army, and Thomas P. Bostick, Chief of Engineers of the Corps. Defendants now timely bring this Motion to Transfer the case to the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1404(a).

## II.     Legal Standard

Even where a plaintiff has brought its case in a proper venue, a district court may, "for the convenience of parties and witnesses, in the interests of justice . . . transfer [it] . . . to any other district . . . where [the case] might have been brought." 28 U.S.C. § 1404(a). District courts have "discretion . . . to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). Courts in this circuit are instructed to consider motions to transfer venue favorably, given "[t]he danger that a plaintiff might manufacture venue in the District of Columbia . . . by naming high government officials as defendants . . . ." Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993).

To warrant transfer under § 1404(a), the movant must first show that the plaintiff could originally have brought the case in the transferee district. Van Dusen, 376 U.S. at 622. The movant must also show that "considerations of convenience and the interest of justice weigh in favor of transfer . . . ." Sierra Club v. Flowers, 276 F. Supp. 2d 62, 65 (D.D.C. 2003). This

4

second inquiry "calls on the district court to weigh in the balance a number of case-specific factors," related to both the public and private interests at stake. Stewart Org., 487 U.S. at 29.

## III. Analysis

### A. Original Venue

Defendants assert, and Plaintiffs wisely do not contest, that the case could originally have been brought in the District of South Carolina, as required by 28 U.S.C. § 1404(a). Under 28 U.S.C. § 1391, the general federal venue statute, venue in a suit against the federal government will lie, at a minimum, in any district in which the plaintiff resides. 28 U.S.C. § 1391(e)(1)(C). Here, the District of South Carolina is Plaintiffs' home forum, making venue proper in that district. Because the case could have been brought there, this requirement of Section 1404(a) is satisfied.

### B. Factors to Consider

Having cleared this preliminary hurdle, the Court must now assess both the private- and public-interest factors that underlie the case-specific discretionary transfer inquiry under § 1404(a). Those private-interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. See Trout Unlimited v. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996). The public-interest factors include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in having local controversies decided at home. See id. In this case, five of the six private-interest factors weigh in favor of transfer or are neutral between the two venues, while only Plaintiffs' choice of forum weighs against transfer. Likewise, two of the public-interest factors are neutral,

5

but the third, and perhaps most important factor – the interest in having local controversies decided at home – tips heavily in favor of transfer.

1. *Private-Interest Factors*

The starting point of the private-interest inquiry under § 1404(a) is the parties' respective forum choices. While Plaintiffs' choice is ordinarily afforded deference, less deference is given where, as here, Defendants seek "transfer to the plaintiffs' resident forum." Airport Working Grp. of Orange Cnty., Inc. v. Dep't of Def., 226 F. Supp. 2d 227, 230 (D.D.C. 2002) (internal citations omitted). Plaintiffs are based in Charleston and cite significant ties to that city, and although they claim to have members located across the United States, neither alleges that it has any offices in the District of Columbia or members who live here. See Compl., ¶¶ 7-9. Deference is further limited where "the plaintiff's choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter," and Defendants seek transfer to a forum that does have such ties. Trout Unlimited, 944. F. Supp. at 17; see also Sierra Club, 276 F. Supp. 2d at 67. In this case, Plaintiffs' claim is overwhelmingly local in nature and has no meaningful nexus with the District of Columbia. The project provisionally approved is located in Charleston, its many effects – whatever they might be – will be felt there, and the relevant decisionmakers in the Corps are there as well, thus giving the District of South Carolina meaningful ties to the controversy and an interest in the parties and subject matter. See Compl., ¶¶ 41-64.

Plaintiffs suggest, however, that because this case concerns merely the application of federal law by federal agencies headquartered in Washington, D.C., the case is of a "national character" that gives it an appropriate nexus to the District of Columbia. See Opp. at 9. They further argue that Charleston's national importance as a historic district heightens the case's

6

national relevance and nexus to D.C., and weighs against transfer. See Opp. at 13. Neither point is convincing.

Plaintiffs' first contention simply proves too much. While they are of course correct in noting that the Corps is headquartered in the District of Columbia and that the relevant actions were taken pursuant to federal statutes, common sense dictates that that alone cannot be dispositive. If it were, any challenge involving a federal law implemented by a federal agency could not be transferred elsewhere. Consistently, district courts in this circuit have held that the mere fact that a case concerns the application of a federal statute by a federal agency does not provide a sufficient nexus to the District of Columbia to weigh against transfer. See, e.g., Sierra Club, 276 F. Supp. 2d at 68 ("[P]recedent in this circuit does not require or even encourage resolution in this forum of [Endangered Species Act] and other [federal] environmental claims . . . ."); Nat'l Wildlife Fed'n v. Harvey, 437 F. Supp. 2d 42, 49 (D.D.C. 2006); Valley Community Preservation v. Mineta, 231 F. Supp. 2d 23, 45 (D.D.C. 2002). The issue Plaintiffs raise here is really an issue of the relative competency of this Court and the District of South Carolina to decide the legal questions at issue in this case; this topic is properly addressed among the public-interest factors in the transfer inquiry. See Section III.B.2, *infra*. The Court further notes that while a facial attack on the statutes and regulations at issue here might have the kind of national impact that would weigh against transfer, Plaintiffs here merely bring an APA challenge to a decision by a local division of the Corps with overwhelmingly local effects.

Plaintiffs' reliance on The Wilderness Soc'y v. Babbitt, 104 F. Supp. 2d 10 (D.D.C. 2000), to suggest that Charleston's national importance as a historic district provides a sufficient nexus to the District of Columbia is likewise misplaced. Plaintiffs' claim that transfer was denied in Wilderness Soc'y because of the broad national importance of the Nationwide

7

Petroleum Reserve planning area in Alaska mischaracterizes that case's holding. See Opp. at 8. In Wilderness Soc'y, the court found a sufficient nexus to the District of Columbia because of public meetings and agency decisionmaking that occurred in D.C., as well as the nationwide use of resources from the Strategic Petroleum Reserve. Wilderness Soc'y, 104 F. Supp. 2d at 14. In other cases where the land at issue was merely visited by or of interest to citizens from across the country, district courts in this circuit have not found a "national interest" sufficient to render transfer inappropriate. See, e.g., Southern Utah Wilderness Alliance v. Norton (SUWA II), No. 01-2518, 2002 WL 32617198, at *3 (D.D.C. June 28, 2002) (distinguishing Wilderness Soc'y and granting motion to transfer).

In contrast to Plaintiffs' choice, Defendants have chosen Plaintiffs' home forum, which, unlike the District of Columbia, does have meaningful ties to the controversy. See Airport Working Grp., 226 F. Supp. 2d at 230; Trout Unlimited, 944 F. Supp. at 17. Defendants have chosen the forum wherein the project itself, the decisionmakers, and the affected community are all located, thus giving the District of South Carolina a strong interest in the outcome of the dispute. Because Plaintiffs have chosen an unrelated foreign forum, while Defendants seek to have the case heard in Plaintiffs' home forum, the first two factors in the transfer inquiry weigh in favor of transfer.

The third factor, where the claim arose, also falls in this direction. This case arises out of a provisional approval granted to the South Carolina Ports Authority by officials from the Charleston District of the Corps for work to be completed in Charleston, whose effects, if any, would be felt there. See Compl., ¶¶ 1, 37-39. All of the Corps' documentation was prepared in Charleston, and the Provisional Authorization was signed by Lieutenant Colonel Chamberlayne, the Commander and District Engineer for the Charleston District of the Corps, who lives and

8

works in Charleston. See Chamberlayne Decl., ¶¶ 1, 7, 9. Because the subject matter of the claim and the agency action from which it arose are located in Charleston, in the District of South Carolina, this factor supports transfer. See New Hope Power Co. v. Army Corps of Eng'rs., 724 F. Supp. 2d 90, 95 (D.D.C. 2010) (noting claim arose in Florida for purposes of transfer analysis where issue paper "was drafted by the Corps' district office in Florida"); Harvey, 437 F. Supp. 2d at 47 (transferring case where disputed decisions were made in Florida by local agency officials); Southern Utah Wilderness Alliance v. Norton (SUWA I), 315 F. Supp. 2d 82, 87 (D.D.C. 2004) (approving transfer where decisions were made by Bureau of Land Management officials in Utah); Trout Unlimited, 944 F. Supp. at 18 (granting motion to transfer where administrative record was prepared and signed in Denver). Indeed, the Court notes that the Complaint alleges no involvement by Corps staff based in Washington. While the parties disagree sharply regarding the effects of the construction work to be performed, the potential effects Plaintiffs have alleged will all be felt in Charleston, not in Washington. See Compl., ¶¶ 25-32.

The fourth factor, the convenience of the parties, also slightly tilts toward transfer. Both Plaintiffs are based in Charleston, see Compl., ¶¶ 7-9, and cannot reasonably claim to be inconvenienced by litigating in their home forum. While Plaintiffs note that the Corps is represented by attorneys based in Washington, D.C., other district courts within this circuit have held this to be irrelevant to the transfer inquiry. See, e.g., Harvey, 437 F. Supp. 2d at 48 ("[T]he fact that Defendant's counsel is located in the District of Columbia does not justify denying transfer because 'any inconvenience to [Defendant's counsel] is offset by the fact that they represent the party requesting the transfer.'") (quoting Northwest Forest Res. Council v. Babbitt, No. 93-1579, 1994 WL 908586, at *3 n.6 (D.D.C. Apr. 13, 1994)).

9

The final two private-interest factors, the convenience of witnesses and the ease of access to sources of proof, are neutral with respect to transfer. In all likelihood, this case will be decided on the basis of the administrative record, without discovery. See 5 U.S.C. § 706; Camp v. Pitts, 411 U.S. 138, 142 (1973). These two factors then "[have] less relevance [to the transfer inquiry] because this case involves judicial review of an administrative decision . . . ." Trout Unlimited, 944 F. Supp. at 18; see also SUWA I, 315 F. Supp. 2d at 88 (finding convenience of witnesses irrelevant where parties agreed case would be decided solely on administrative record); Sierra Club, 276 F. Supp. 2d at 69 ("the location of witnesses is not a significant factor" in judicial review of agency action). If any witnesses are necessary, however, "it appears that any relevant witnesses regarding the agency's decision and actions" are located in or near the District of South Carolina. SUWA II, 2002 WL 32617198, at *4. The Court notes, however, that at this point, the parties have not indicated that they intend to request an evidentiary hearing or trial at which they would call witnesses, so even this consideration is of limited weight in the Court's analysis. See id. While the fact that the "documents that will comprise the administrative record were created primarily" in South Carolina slightly favors transfer, Harvey, 437 F. Supp. 2d at 48, this factor does not weigh heavily in the Court's analysis, as the administrative record is not "voluminous." Cf. Trout Unlimited, 944 F. Supp. at 18 (finding necessity of moving a "voluminous record" to District of Columbia supported transfer).

In sum, the Court finds that the private-interest factors weigh heavily in favor of transfer to the District of South Carolina.

### 2. *Public-Interest Factors*

The first two public-interest factors, the transferee court's familiarity with the governing law and the relative congestion of the courts' calendars, are neutral with respect to transfer. The

10

local interest in having local controversies decided at home, however, weighs strongly toward transfer.

With regard to the transferee's familiarity with the governing law, the Court sees no need to deviate from "the principle that the transferee federal court is competent to decide federal issues correctly." Sierra Club, 276 F. Supp. 2d at 70 n.6 (quoting In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1175 (D.C. Cir. 1987)) (internal quotation marks omitted). Since "both courts are competent to interpret the federal statutes involved[,] . . . there is no reason to transfer or not transfer based on this factor." Harvey, 437 F. Supp. 2d at 49. Similarly, although statistics show that this district resolves cases slightly more quickly than the District of South Carolina, the relative congestion of the two dockets appears comparable. See Mot. at 16 n.10. Absent a showing that either court's docket is "substantially more congested" than the other, this factor weighs neither for nor against transfer. Nat'l Ass'n of Home Builders v. EPA, 675 F. Supp. 2d 173, 178 (D.D.C. 2009). Given the early stage at which Defendants have requested transfer in this case, moreover, their request raises no other concerns regarding judicial efficiency. Compare Trout Unlimited, 944 F. Supp. at 19 (finding no delay would result from transfer of a case "in its earliest stages") with Greater New Orleans Fair Hous. Action Ctr. v. HUD, 723 F. Supp. 2d 14, 27 (D.D.C. 2010) (finding interests of justice weighed against transfer where district court was "familiar with the facts and legal issues raised," and had issued "two opinions . . . [that were] on appeal to the D.C. Circuit").

The third, and "arguably most important," of the public-interest factors – the local interest in having local controversies decided at home – weighs strongly in favor of transfer in this case. SUWA II, 2002 WL 32617198, at *5. In this case, which "[touches] the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote

11

parts of the country where they can learn of it by report only." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947); see also Adam v. Bell, 711 F.2d 161, 167 n.34 (D.C. Cir. 1983) (noting a preference for resolving cases within view of people "whose rights and interests are in fact most vitally affected by the suit"); Armco Steel Co. v. CSX Corp., 790 F. Supp. 311, 324 (D.D.C. 1991). Other district courts in this circuit have held that "this policy rationale applies equally to the judicial review of an administrative decision . . . limited to the administrative record." Trout Unlimited, 944 F. Supp. at 19. This makes sense as any hearing would take place in view of Charleston's citizens if the case were transferred.

The fundamental issue in this case – the Corps' provisional authorization of construction work on the Union Pier Terminal – is a local controversy in the purest sense. Here, "a clear majority of the operative events" took place within the District of South Carolina. Id. The challenged action was taken by the Charleston District of the Corps and the authorized work is to be funded, overseen, and implemented by a South Carolina state agency on state-owned property. See Compl., ¶¶ 1, 2, 32, 34. The issue appears to be one of substantial local interest and controversy in Charleston, see Mot. at 18 n.11, and it is the citizens of Charleston who will most clearly feel the effects of the project. See, e.g., Nat'l Trust for Historic Preservation in the U.S. v. U.S. Dep't of Vet. Affairs, No. 09-803, slip op. at 4 (D.D.C. July 27, 2009) (approving transfer where controversy was of intense local interest to residents of New Orleans, where construction at issue was to take place). In addition, the Provisional Authorization is contingent on the outcome of a parallel, state-level, decisionmaking process, further indicating a strong local interest in the subject matter of the case. See Sierra Club, 276 F. Supp. 2d at 75 (finding Florida had a local interest in federal action in furtherance of plan "drafted by a state committee and adopted by the Florida legislature").

12

While the Court declines to address the merits of Plaintiffs' allegations concerning the impact of the proposed work, it notes that the effects alleged are overwhelmingly local in nature. See, e.g., Compl., ¶¶ 1, 7, 9. Because any potential impacts are to be felt locally, the controversy is truly local to the District of South Carolina. See Trout Unlimited, 944 F. Supp. at 20 (deeming transfer appropriate where the "controversy [arose] from an administrative decision made in Colorado which directly affects Colorado's Arapaho and Roosevelt National Forests, water systems, wildlife, and more importantly, its people"); SUWA I, 315. F. Supp. 2d at 89 (finding that where the "alleged consequences would be most particularly felt in Utah . . . the courts of Utah would have a clear interest in resolving the dispute"); Harvey, 437 F. Supp. 2d at 50 (finding the controversy "located in Southern Florida" where it affected "navigation, flood control, agriculture, and municipal water supplies in South Central Florida").

Plaintiffs cite a number of cases, none of which is binding on this Court, in an attempt to characterize this controversy as one of such great national interest that it must be heard here in the District of Columbia. Even if these cases were binding, Plaintiffs' reliance would be misplaced, as each is distinguishable from the present case. Plaintiffs take pains to note, for example, that in Concerned Rosebud Area Citizens, the court commented that questions of administrative compliance with federal law were of the sort "routinely and properly answered in this District and Circuit." 34 F. Supp. 2d at 776. While certainly true, that observation is simply inapposite: this Court's competence to resolve questions arising under the APA is a separate issue entirely from the question of whether the case at bar is a "local controversy" for purposes of a motion for discretionary transfer. Likewise, while the court in Luna v. England, No. 02-0395, slip op. (D.D.C. April 25, 2003), made note of Pearl Harbor's importance as a national historic site visited by tourists from across the country, its decision to decline transfer turned on

an entirely different ground – plaintiff's inability to locate competent counsel in Hawaii "familiar with the complex areas of [historic] preservation law" at issue in the case. Id. slip op. at 5-6. That is certainly not a worry here.

Otay Mesa Property L.P. v. Dep't of Interior, 584 F. Supp. 2d 122 (D.D.C. 2008), also hinges on an entirely distinct set of facts. There, plaintiffs challenged a critical habitat designation pursuant to the Endangered Species Act that affected their individual parcels of land. The court determined that the controversy was not of generalized local interest because it was, in a sense, too localized: as it only touched on these particular parcels of land, there was no broad local interest in the controversy and it could be properly heard in the District of Columbia. See id. The court in Ravulapalli v. Napolitano, 773 F. Supp. 2d 41 (D.D.C. 2011), came to a similar conclusion, this time in a case involving challenges to individualized determinations regarding immigration status. See id. In that case, while the decisions at issue were made by local agency officials, the controversy was not of generalized local interest, involving only the straightforward application of nationwide policy directives to individual cases. See id. Here, by contrast, any effects will be diffused over the greater Charleston area and will not be concentrated among a few individuals named as plaintiffs. Indeed, Plaintiffs here are both community-based organizations who draw their members from across the region, precisely the type of organizations that typically represent those likely to be affected by the diffuse, region-wide effects of policy decisions that characterize local controversies. Even if these cases were binding on this Court, they are thus both factually and legally distinguishable from the present case, and they do not help Plaintiffs in their effort to reframe an entirely local controversy into one of such national scope that it demands to be heard outside of their home forum.

In sum, the great weight of both the public- and private-interest factors supports transfer to the District of South Carolina. While the Court acknowledges that Plaintiffs' choice of forum is afforded some deference, that deference is greatly reduced when Plaintiffs have brought the case in an entirely foreign forum. The controversy at issue here involves a decision made by local actors in South Carolina whose effects will be felt locally. It did not arise in the District of Columbia, nor does the District of Columbia have any particularized interest in its resolution. With only the Plaintiffs' choice of forum weighing against transfer, the Court finds that both convenience and the interests of justice favor transfer to the District of South Carolina.

## IV. Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order this day transferring the case to the United States District Court for the District of South Carolina.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: September 27, 2012